UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLEY THEATRE | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action 4:19-cv-01987 |
| | § | |
| HANOVER INSURANCE CO., | § | |
| | § | Jury Trial Demanded |
| *Defendant*. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **ALLEY THEATRE**, as Plaintiff, complaining of **HANOVER INSURANCE CO.**, hereinafter referred to as Defendant, and for cause of action herein would respectfully show unto the Court as follows:

## PARTIES

1. Plaintiff the Alley Theatre ("Alley") brings this complaint against defendant Hanover Insurance Company ("Hanover") for breach of contract and bad faith, and alleges the following:

2. The Alley Theatre is a nationally recognized not-for-profit performing arts company and a cornerstone of the Houston fine arts community. The Alley's performance spaces and primary facilities are located at 615 Texas Avenue in the heart of Houston's downtown theater district.

3. Defendant Hanover Insurance Company is a foreign corporation conducting business in Texas. This suit arises out of Defendant's business in Texas. Defendant has accepted service of process and filed a notice of removal in this Court.

## PROCEDURAL BACKGROUND

4. On May 3, 2019, Plaintiff filed its Original Petition in the 61st Judicial Dirstrict Court of Harris County, Texas, Cause No. 2019-31244. On May 31, 2019, Defendant filed its Original Answer and Jury Demand. On June 3, 2019, Defendant filed a Notice of Removal.

5. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), this First Amended Petition may be made as a matter of course because it is timely filed within 21 days after service of Defendant's Original Answer.

## JURISDICTION AND VENUE

6. Jurisdiction is proper because the parties are diverse and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7. Venue is proper because the the facts giving rise to this lawsuit occurred in the Sourthern District of Texas, Houston, Division.

## FACTS

### The Alley purchases the subject policy from Hanover

8. In 2016, the Alley purchased a Commercial Lines Policy from Hanover covering the period August 31, 2016 through August 31, 2017. The Hanover insurance issued to the Alley bears policy number RHD 759991213 and is attached hereto as exhibit 1.

9. The Hanover Policy provides approximately $156.9 million of coverage for property damage, lost income and expenses, as set forth in the "Schedule of Coverages Commercial Output Program" which states:

> Catastrophe Limit – The most "we" pay for any combination of or total of losses arising under one or more coverages in any one occurrence is: $156,890,000.

**Hurricane Harvey devastates the Alley**

10. On August 17, 2017, a tropical storm over the Caribbean was assigned the name Harvey by the United States National Hurricane Center. On August 24 the storm was upgraded from a tropical storm to a category 4 hurricane.

11. On August 25, 2017, Hurricane Harvey struck Texas, causing extensive damage to the Houston area, including to the downtown theater district, and specifically to the Alley Theatre.

12. The storm's damage to the Alley's facilities required the complete shutdown of the theatre's operations for months. Huge quantities of water needed to be pumped from the Alley's lower levels, where waters reached the ceilings. The Neuhaus Theatre, one of the two primary performance spaces in the Alley, was nearly a total loss. In addition, tens of thousands of stage props, along with light, sound and laundry equipment were destroyed.

13. Because the performance spaces and facilities on Texas Avenue were unusable for months following the hurricane, the Alley was forced to cancel several performances and find an alternative venue for certain performances while remediation and repair work was underway at the Texas Avenue location. The Alley had to cancel or relocate four productions scheduled for performances in the Neuhaus Theatre. The Alley was able to secure the 185 seat Jose Quintero theatre at the University of Houston (a smaller stage) for one production from September 15 through October 15, 2017, but was unable to relocate its second major production of the 2017 fall season that had been scheduled to be performed in the Alley's 774 seat Hubbard Theatre.

14. More than a year and a half has passed since Hurricane Harvey. The Alley has spent more than $12 million to repair the building and the Alley is back in business in its home in downtown Houston. In addition to the repair cost and approximately $4 million in lost theatrical

equipment and props, the Alley lost substantial revenue and incurred significant expenses – more than $5 million – while the theatres were unusable.

### Hanover's response to The Alley

15. Within a week of the hurricane, the Alley notified Hanover of the damage and the Alley has been continually engaged with Hanover for the past 18 months regarding the extent of the damage and the steps taken to repair and reopen the Alley Theatre.

16. Despite the Alley's efforts to get Hanover to pay what is owed under the policy, Hanover has denied and delayed payments for the Alley's claimed losses that Hanover knows or should know are covered by the Policy. Although Hanover has paid certain amounts due under the Policy, it has blatantly denied its obligation to pay for more than $5 million in lost income and expenses covered by the income coverage portion of the Policy and more than $7 million covered by the property damage provisions of the Policy.

17. Hanover's delays and denials in providing compensation for these losses place Hanover in breach of the Policy and constitute bad faith.

### Hanover denies payment for lost earnings, operating expenses, and extra expense

18. Hanover's Policy includes a "Commercial Output Income Coverage Part" that covers lost earnings, continuing operating expenses, and extra expense incurred during the restoration period when Alley's business was interrupted:

> "We" cover "your" actual loss of net income (net profit or loss before income taxes) that would have been earned or incurred and continuing operating expenses normally incurred by "your" "business", including but not limited to payroll expense . . .

> "We" cover the extra expenses that are necessary during the restoration period that you would not have incurred if there had been no direct physical loss or damage to property . . .

"We" cover any extra expense to avoid or reduce the interruption of "business" and continue operating at a "covered location", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location . . .

"We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

19. Indeed, a review of the Policy language indicates that:

   a. The Flood Endorsement covers "direct physical loss to covered property at covered locations caused by flood."

   b. The Flood Endorsement limit does not limit coverage for losses or damages that are outside direct physical loss to covered property caused by flood.

   c. "Direct physical loss to covered property," subject to the Flood Endorsement limit, is separate from lost earnings, continuing operating expenses, and extra expense incurred during the restoration period; those losses are recoverable when the insured has a suspension of operations due to physical loss or damage to covered property.

   d. Lost earnings, continuing operating expenses, and extra expense are different from the category of losses subject to the Flood Endorsement limit.

   e. Income coverage for lost earnings, continuing operating expenses, and extra expense has its own applicable extensions and limits of coverage.

   f. The Flood Endorsement does not exclude coverage for lost earnings, continuing operating expenses, and extra expense, nor does the Flood Endorsement make lost earnings, continuing operating expenses, and extra expense subject to the Flood Endorsement limit.

5

20. Despite the clear language of the Policy which required Hanover to compensate the Alley for lost earnings, continuing operating expenses, and extra expense, including the cost of cancelling shows and putting on shows at replacement venues, Hanover has denied coverage and refused to pay the Alley anything under the Income Coverage provisions of the Policy.

21. Hanover told the Alley that its lost income and covered expenses are subsumed within the Policy's coverage for property damage caused by flood, which is capped at $3 million. Hanover's position is untenable and contrary to any reasonable interpretation of the Policy, which expressly restricts the Policy's $3 million Flood limit to property damage. It does not apply to lost income or covered expenses.

22. Hanover has delayed resolution of the Alley's claim for these losses by requesting multiple rounds of increasingly detailed documentation requiring many hours of time by the Alley staff to compile. Hanover's requests are solely for purposes of delay and are not meant to bring this matter to a resolution. Hanover has steadfastly maintained that the Alley's income losses and covered expenses are subject to the Policy's $3 million Flood limit (which by its own terms limits only property damage, not lost income and expenses), and Hanover has denied coverage on that basis alone. Additional documentation concerning Alley's claim will not change Hanover's denial, and will not resolve the underlying dispute.

23. The Policy's Flood Endorsement states:

> When blanket flood coverage is indicated on the "schedule of coverages," "we" cover ***direct physical loss to covered property*** at "covered locations" caused by "flood". . . . the following ***"limits" apply to loss to covered property*** caused by "flood" . . . . (emphasis added).

24. By its own terms, the Flood Endorsement makes clear that its $3 million limit applies only to direct physical loss to covered property. It does not limit any other category of loss, such as lost earnings and expense coverage.

6

25.     The schedule of coverages includes a completely separate "Income Coverage Part" for business interruption losses, setting a separate limit of $5,040,000 for lost income and expenses during the restoration period.  This separate income coverage, with its separate limit, further demonstrates that the Flood limit for property damages does not apply to the Alley's separate income coverage for business interruption damages.

**Hanover denies coverage for property damage caused by sprinkler leakage.**

26.     One level below Texas Avenue, a vault in the Alley's basement houses CenterPoint Energy's electrical equipment that provides power to the Alley.  The vault is ventilated by two shafts rising to above street level and covered with iron grates in the ramp accessing the Alley.  Below ground, the vault was separated from the lower levels of the Alley by a concrete block wall.

27.     As heavy rain fell and accumulated during Hurricane Harvey, water flowed through the grate covers into the underground vault.  Hurricane waters filled the vault and broke through the wall separating the vault from the Alley basement.

28.     When the water broke through, a portion of the wall broke open a two-inch sprinkler pipe in the Alley basement.  According to water meter readings, more than a million gallons of water leaked out of the broken sprinkler pipe and into the Alley basement before the sprinkler system could be shut off.

29.     The combination of rain water and sprinkler water filled the lower levels of the Alley, in some places to the ceiling, causing extensive damage to the building and its contents.

30.     The Policy's property damage coverage is laid out in the "Commercial Output Program Property Coverage Part" of the Policy.  The specific perils covered by the Policy include both sprinkler leakage and hurricane: "Specified Perils means . . . explosion . . . fire . . . leakage from fire extinguishing equipment . . . water damage . . . and windstorm."

31. The standard policy language excludes coverage for flood but expressly includes coverage for property damage caused by sprinkler leakage. The Perils Excluded section of the Property Coverage Part of the Policy states:

> "Flood – "We" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

32. The Alley purchased a Flood Endorsement, which eliminates the flood exclusion from the Policy. The Flood Endorsement states that "Under Perils Excluded, the exclusion for Flood is deleted." The Flood Endorsement limits coverage for property damage caused by flood to $3 million. The Flood Endorsement does not purport to limit any loss under the Policy, other than physical loss to covered property caused by flood. The Flood Endorsement limit does not limit coverage related to any perils under the Policy, other than flood.

33. Nothing in the Flood Endorsement suggests or implies or can be reasonably interpreted as removing coverage for sprinkler leakage. It is unreasonable to interpret the Policy as providing that by paying an additional premium to acquire flood protection, the Alley somehow gave up coverage for specified covered perils of fire, explosion, sprinkler leakage, water damage, or windstorm.

34. The Policy provides up to $156.9 million of coverage for property damage, as set forth in the "Schedule of Coverages Commercial Output Program" which states:

> Catastrophe Limit – The most "we" pay for any combination of or total of losses arising under one or more coverages in any one occurrence is: $156,890,000.

35. The cost to repair the damage and restore the Alley's building on Texas Avenue was more than $10 million, which is well within the limit of coverage provided by the Policy.

36. Hanover takes the position that the $3 million flood limit includes not only the lost income and expenses described above, but also the losses resulting from the million gallons of water that leaked out of the sprinkler system into the Alley basements.

37. Hanover's denial of coverage for the million gallons of sprinkler leakage is not a reasonable reading of the Policy and its denials and delays are in breach of the Policy and taken in bad faith.

### Named Storm Hurricane Harvey caused the Alley damage

38. The Policy includes a "Named Storm Deductible Endorsement" which states

> In this endorsement a named storm refers to weather related events given a name or designated by the National Weather Center as such. The deductible provision under How Much We Pay is replaced by provisions for Flat Deductible or Percentage Deductible when loss to covered property is caused by or results from a named storm. Loss or damage resulting from a covered weather condition, other than from a named storm, will be considered part of the named storm occurrence if the loss or damage would not have occurred without the weather conditions from the named storm.

39. The Policy includes a list of "Perils Excluded" from coverage. The Perils Excluded language sets out each of the perils for which coverage is not provided, including earth movement, nuclear hazard, utility failure, sewer backup, and others. There is no exclusion for the peril of a Named Storm.

40. Other endorsements, such as Flood, contain explicit limits on coverage; Named Storm does not contain any limitation. As a result, the coverage limits for Named Storm are the general policy limit of $156.9 million, well above the loss to the Alley.

41. In the event of a Named Storm, the Policy deductible increases from $25,000 to 1% of the value of the covered property.

42.     Hanover invoked the Named Storm deductible on September 9th and 10th, 2017. Hanover retracted that position on September 22, 2017, choosing the lower deductible and claiming the Alley's losses were subject to the $3 million flood limit, rather than the unlimited peril of Named Storm.

43.     On February 19, 2019, the Alley provided Hanover notice of its claims pursuant to Texas Insurance Code 542A. On April 18, 2019, Hanover responded and continued to deny coverage.

## CLAIMS

### First Claim for Relief – Declaratory Judgment

44.     Plaintiff restates and incorporates all the paragraphs above into this claim for relief.

45.     Pursuant to the terms of the Policy, Alley respectfully requests a declaratory judgment that the Flood Endorsement limit does not limit coverage under the "Commercial Output Program Income Coverage Part" of the Policy. Specifically, Alley seeks a declaration that:

   a. The Flood Endorsement covers "direct physical loss to covered property at covered locations caused by flood."

   a. The Flood Endorsement limit does not apply to losses or damages that are outside "direct physical loss to covered property" caused by flood.

   b. "Direct physical loss to covered property," subject to the Flood Endorsement limit, is separate from lost earnings, continuing operating expenses, and extra expense incurred during the restoration period; those losses are recoverable when the insured has a suspension of operations due to physical loss or damage to covered property.

    c. Lost earnings, continuing operating expenses, and extra expense are different from the category of losses subject to the Flood Endorsement limit.

    d. Income coverage for lost earnings, continuing operating expenses, and extra expense has its own applicable extensions and limits of coverage.

    e. The Flood Endorsement does not exclude coverage for lost earnings, continuing operating expenses, and extra expense, nor does the Flood Endorsement make lost earnings, continuing operating expenses, and extra expense subject to the Flood Endorsement limit.

46. This dispute presents a justiciable controversy that will be resolved by awarding declaratory relief because Hanover has improperly denied coverage under the "Income Coverage Part" of the Policy, and has incorrectly claimed the Alley's lost earnings and expenses are subsumed within and subject to the Flood Endorsement limit.

47. Alley requests a speedy hearing to resolve this action for declaratory judgment.

**Second Claim for Relief – Breach of Contract Against Hanover**

48. Plaintiff restates and incorporates all the paragraphs above into this claim for relief.

49. Hanover sold the Policy to the Alley and the Policy obligates Hanover to pay for the Alley's lost income and expenses caused by Hurricane Harvey up to a limit of $5,040,000. The Alley has provided Hanover with proof of covered income losses and expenses well in excess of the $5.04 million limit, but Hanover has refused to pay any amount owed pursuant to the earnings and extra expense coverage provisions.

50. The Alley promptly advised Hanover of its lost income and expenses and continued to provide updated information and supporting materials to Hanover, but Hanover continues to refuse to pay the Alley for these covered losses and expenses.

51. The Policy obligates Hanover to pay for the Alley's remediation and repair of its building on Texas Avenue up to a maximum of $156 million. The Alley promptly advised Hanover of the damage to the theater building caused by Hurricane Harvey and sprinkler leakage. The Alley has continued to provide updated information and supporting materials to Hanover concerning the repairs. But Hanover has paid the Alley only $3 million for property damage, claiming all building damage is subject to the Policy cap on losses due to flood.

52. The Alley has satisfied all conditions precedent and obligations required by the Policy.

53. Hanover is in breach of the obligations imposed on it by the Policy.

**Third Claim for Relief – Breach of Texas Insurance Code Against Hanover**

54. Plaintiff restates and incorporates all the paragraphs above into this claim for relief.

55. The Alley suffered various losses covered by the Policy, promptly notified Hanover of its losses, satisfied all conditions of the policy and provided Hanover with statutory notice of its claim under Texas Insurance Code Chapter 542A .

56. Hanover is liable for the claim and had a duty to pay the claim in a timely manner.

57. Hanover breached its duties under the Texas Insurance Code Chapter 542 by failing to comply with the deadlines imposed by that Chapter, including by:

   a. Failing to notify the Alley in writing of the acceptance or rejection of the Alley's claim within the time required under Texas Insurance Code § 542.056;

   b. Failing to notify the Alley in writing within the time required under Texas Insurance Code § 542.056 of any need for additional time to accept or reject the Alley's claim; and

    c. Failing to pay the Alley's claim within the time required under Texas Insurance Code § 542.058.

58. As a result of its violation of Texas Insurance Code Chapter 542, Hanover is liable to pay the Alley interest in the amount of the claim as damages at the rate determined on the date of judgment by adding 5% to the interest rate determined under Texas Finance Code § 304.003.

59. Hanover is also liable to the Alley for reasonable attorney's fees under Texas Insurance Code § 542A, in an amount to be determined at trial.

### Fourth Claim for Relief – Bad Faith Against Hanover

60. Plaintiff restates and incorporates all the paragraphs above into this claim for relief.

61. Coverage under the Policy for the Alley's lost income and expenses is reasonably clear from the express language of the Policy.

62. Coverage for property damage resulting from the sprinkler leakage is reasonably clear from the express language of the Policy.

63. Coverage for property damage from water damage and named storms, such as Hurricane Harvey, is reasonably clear from the express language of the Policy.

64. Despite the clear language of the Policy, Hanover has refused to pay and has delayed payment of monies owed to the Alley pursuant to the Policy.

65. As a result of Hanover's bad faith refusal to pay amounts due under the policy, the Alley has been forced to (a) bear the financial burden of these losses for more than a year, (b) utilize funds from donors to cover these losses and thereby decrease the funds from donors that would otherwise be available to the Alley for other purposes, and (c) incur related costs and expenses that would not have been incurred if Hanover had not acted in bad faith.

## DEMAND FOR JURY TRIAL

66. Plaintiff hereby demands trial by jury.

## CONDITIONS PRECEDENT

67. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Alley Theatre respectfully requests that judgment be entered in its favor and against Wortham and Hanover as follows:

- On the Alley's first cause of action, a speedy hearing and declaration that the Flood Endorsement limit does not limit coverage under the "Commercial Output Program Income Coverage Part" of the Policy;

- On the Alley's second cause of action, awarding compensatory damages for Hanover's breach of its contractual obligations pursuant to the Policy in an amount to be determined at trial;

- On the Alley's third and fourth causes of action, awarding compensatory, statutory, punitive and any other available damages for Hanover's bad faith delay and refusal to pay valid claims;

- For reasonable attorneys' fees and enhanced interest, including pursuant to TCPRC 38.001, Texas Insurance Code 542.60, and Texas Insurance Code 542A;

- For pre-judgment and post judgment interest; and

- Awarding the Alley such other and further relief available under the law.

Dated: June 20, 2019

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: /s/  *Chanler A. Langham*
Neal S. Manne
Attorney-in-charge
State Bar No. 12937980
S.D. Adm. #10209
nmanne@susmangodfrey.com
James T. Southwick
State Bar No. 24001521
S.D. Adm. #21854
jsouthwick@susmangodfrey.com
William R.H. Merrill
State Bar No. 24006064
S.D. Adm. # 23601
bmerrill@susmangodfrey.com
Jonathan J. Ross
State Bar No 00791575.
S.D. Adm. # 18293
jross@susmangodfrey.com
Chanler A. Langham
State Bar No. 24053314
S.D. Adm. # 659756
clangham@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666

*Attorneys for Plaintiff Alley Theatre*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 20, 2019, a true and correct copy of the foregoing instrument has been served upon all known counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing. as listed below pursuant to the Texas Rules of Civil Procedure.

Peri H. Alkas, TBN: 00783536
Mark C. Dodart, TBN: 00792286
Chad W. Schreiber, TBN: 24085732
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: 713-626-1386