IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLEY THEATRE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1987 |
| | § | |
| HANOVER INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

On March 12, 2020, counsel for the Alley Theatre and Hanover Insurance Company appeared before the court for a scheduling conference and raised the issue of whether donations to a nonprofit are treated as revenues for business interruption calculations under the Policy. (*See* Docket Entry No. 29). Both parties submitted memoranda in support of their positions, and the Alley moved to respond to Hanover's memo. (Docket Entry Nos. 31, 32, 33). The Alley's motion is granted, and the court will consider the Alley's response brief. (Docket Entry No. 33).

The Policy provides income coverage "during the 'restoration period' when 'your' 'business' is necessarily wholly or partially interrupted by direct physical loss of or damage to property at a 'covered location.'" (Docket Entry No. 13-2 at 74). Specifically, the Policy covers "actual loss of net income (net profit or loss before income taxes) that would have been earned or incurred and continuing operating expenses normally incurred by 'your' 'business,' including but not limited to payroll expense." (*Id.*). The Income Coverage Part includes a section on valuation, which provides:

In determining an earnings loss "we" consider:

a. the experience of "your" "business", before the loss and the probable experience during the time of interruption had no loss occurred;

  b. "your" continuing operating expenses normally incurred by "your" "business", including but not limited to payroll expense necessary to resume "business" to a similar level of service that existed before the occurrence of direct physical loss or damage; and

  c. pertinent sources of information and reports including:

    1) "your" accounting procedures and financial records . . .

(*Id.* at 78).

At the scheduling conference, Hanover argued that the Alley is required to produce information on the donations it received after it was closed due to Hurricane Harvey because the donations represent revenue that is included in the business-interruption loss calculation. The Alley responds that these donations do not represent revenue, and, even if they did, they would not be included in the business-interruption loss calculation because they were received after the Alley closed due to Hurricane Harvey.

While the Policy does not include a definition, revenue is defined as "[i]ncome from any and all sources; gross income or gross receipts." *Revenue*, BLACK'S LAW DICTIONARY (11th ed. 2019). In *In re Deepwater Horizon*, 785 F.3d 1003 (5th Cir. 2015), the Fifth Circuit considered the meaning of revenue for nonprofit organizations. The case involved the interpretation of a settlement agreement that allowed nonprofits to count "donations and grants as 'revenue' under the terms of the agreement." *Id.* at 1006. BP argued that the settlement agreement required proof of "business revenue," which could not include grants and donations to nonprofits because business activity means activity engaged in for profit. *Id.* at 1012. The Fifth Circuit disagreed, noting that "modern nonprofits are commercial entities that seek to generate cash surpluses" and had a "revenue-generating nature." *Id.*

The Alley objects to Hanover's reliance on *In re Deepwater Horizon*, arguing that the "case neither involved insurance, nor did it involve the business interruption provisions at issue in this

case." (Docket Entry No. 33-1 at 1). The Alley cites *High Country Arts & Craft Guild v. Hartford Fire Insurance Company*, 126 F.3d 629 (4th Cir. 1997), and *Olivet College v. Indiana Insurance Company*, 1999 U.S. Dist. LEXIS 24118 (W.D. Mich. Sept. 2, 1999), as cases in which the parties did not include lost philanthropic donations in the business-interruption policy-loss calculation. (Docket Entry No. 31 at 1). But neither case discusses donations in the context of revenue calculations. The Alley also argues that donations are not included in revenue because they are not derived from the Alley's "business," which the Policy defines as "the usual business operations occurring at covered locations." (Docket Entry No. 31 at 2) (quoting Docket Entry No. 13-2 at 43). But the Fifth Circuit rejected a similar argument about museum gift-shop receipts in *In re Deepwater Horizon*:

> But if a museum's gift-shop receipts are "business revenue" but its donations are not, as BP suggests, the museum must be categorized as an entity engaged in commercial activity "for profit" in its gift shop operation, but not in its operation of the museum generally. This hair-splitting is not a sensible construction of the Agreement.

785 F.3d at 1012. Distinguishing between the Alley's theater-sales and its charitable donations would similarly require "hair-splitting" that is not within a "sensible" reading of the Policy.

Although the *In re Deepwater Horizon* court was not interpreting an insurance agreement, the Fifth Circuit's discussion of revenue is on point and persuasive. Nonprofit organizations can be revenue-driven without being for-profit. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 646 F.3d 983, 987 (7th Cir. 2011) ("The commercial activity of nonprofits has grown substantially in recent decades, fueled by an increasing focus on revenue maximizing by the boards of these organizations, and this growth has stimulated increased competition both among nonprofit enterprises and with for-profit ones."). And as discussed above, a nonprofit may simultaneously obtain revenue from operations and from charitable donations. This result is

3

consistent with, and supported by, the Internal Revenue Service's treatment of nonprofit revenue, which includes both "contributions and grants" and "program service revenue" in "total revenue." (*See* Docket Entry No. 32 at 3) (quoting the Alley's 2017 Form 990). Donations are considered revenue for nonprofit organizations.

The Alley responds that even if charitable donations are considered revenue, any donations it received when it was unable to operate following Hurricane Harvey may not be included in the business-interruption loss calculation. (Docket Entry No. 31 at 2). The Alley points to the Policy's Income Coverage Part, which states that "[i]n determining an earnings loss [Hanover] consider[s]: the experience of 'your' 'business,' before the loss and the probable experience during the time of interruption had no loss occurred." (*See* Docket Entry No. 13-2 at 78). The Alley argues that donations received after its business was interrupted are not a part of that determination. (Docket Entry No. 31 at 2). Hanover responds that the Alley had been "operating at a loss in the two years before Hurricane Harvey even including donations." (Docket Entry No. 32 at 5). Allowing the Alley to recover lost income under the Policy would result in a "windfall" to the Alley, Hanover argues, which undermines the purpose of the Policy. (*Id.*).

In *Finger Furniture Company v. Commonwealth Insurance Company*, 404 F.3d 312, 313 (5th Cir. 2005), the furniture company held a weekend-long sale after reopening its seven furniture stores that had closed for almost two days due to flooding from Tropical Storm Allison. Finger Furniture filed an insurance claim for the lost sales from its closure. *Id.* Its insurer, Commonwealth Insurance, denied the claim and sought a declaratory judgment. *Id.* The district court granted summary judgment in favor of Finger Furniture, and Commonwealth appealed. *Id.* The policy provided lost business coverage, explaining that "[i]n determining the amount of gross earnings covered hereunder for the purposes of ascertaining the amount of loss sustained, due

consideration shall be given to the experience of the business before the date of the damage or destruction and to the probable experience thereafter had no loss occurred." *Id.* at 314. Commonwealth argued that Finger Furniture did not have an actual loss of sales because it "made up sales" lost in the two-day closing during the following weekend sale. *Id.* The Fifth Circuit disagreed, noting that "the business-loss provision says nothing about taking into account actual post-damage sales to determine what the insured would have experienced had the storm not occurred." *Id.* The court instructed that "[t]he strongest and most reliable evidence of what a business would have done had the catastrophe not occurred is what it had been doing in the period just before the interruption," and therefore the focus should be on "historical sales figures." *Id.*

Hanover responds that *Finger Furniture* is not applicable because it "did not address donations to a nonprofit at all" and argues that this court should follow *Rimkus Consulting Group, Inc. v. Hartford Casualty Insurance Company*, 552 F. Supp. 2d 637 (S.D. Tex. 2007), a Southern District of Texas case that distinguished *Finger Furniture.* (Docket Entry No. 32 at 5). In *Rimkus*, a consulting firm closed its New Orleans office during Hurricane Katrina, but "continued to provide services" and "saw its revenues increase substantially in the months after the storm hit." *Id.* at 640. Rimkus filed several insurance claims, including a business-interruption claim that Hartford denied. *Id.* Rimkus argued that "Hartford improperly denied its claim for the loss of 'pre-storm' business income because Hartford improperly counted its 'post-storm' business income." *Id.* at 642. The district court disagreed, holding that the claim was properly denied: "[b]ecause Rimkus suffered no business income loss, coverage under the policy was never triggered." *Id.* at 643. The court also noted that the policy included "a provision that allow[ed] Hartford to reduce amounts payable to the 'extent that the reduction in volume of business income from the affected income channel is offset by an increase in the volume of business from other

income channels.'" *Id.* at 640. Because it was "clear from the pleadings and summary judgment evidence that the offsetting revenues from income were generated by the staff of the New Orleans office—the affected site, the payment reduction provision" applied. *Id.* at 644. The court distinguished *Finger Furniture*, as follows:

> In *Finger Furniture*, the insured actually closed its doors during the time for which it sought recovery—it made no sales at all on one of the days and only "opened it stores at various times" on the next. In contrast, Rimkus operated its business during the period of time for which it seeks recovery. The fact that its business income was from "post-storm" clientele is of no moment. Rimkus suffered no business income loss because its operations, the provision of engineering and consulting services, continued after Katrina and it received income for those services. Because the clear terms of the policy require "actual loss of Business Income," Hartford properly denied Rimkus' claim.

*Id.* at 645. The facts in this case are more similar to *Finger Furniture* than they are to *Rimkus*. Like the furniture store in *Finger Furniture*, the Alley stopped its operations because of flooding in its theater that made it unable to operate. And unlike the insurance policy in *Rimkus*, there is no payment reduction provision in the Alley's Policy. Instead, the Alley's Policy language mirrors the policy language in *Finger Furniture*.

Hanover also argues that this court should not follow *Finger Furniture* because the case "cited no Texas law throughout its holding and did not cite any Texas case law about insurance not working a windfall if there is a net loss." (Docket Entry No. 32 at 5). Hanover cites *Royal Indemnity Company v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530, 535 (Tex. App. – San Antonio 1982, no writ), in which the Texas Court of Appeals held that "in order for there to be a liability for business interruption loss, the claimant must show an actual monetary loss." (*Id.* at 5 n. 1). But *Little Joe's* dealt with an insurance claim for rent and payroll expenses that the insured did not incur during the period of business interruption. 636 S.W.2d at 535. The Alley's Policy provides coverage when the Alley's "'business' is necessarily wholly or partially interrupted by

direct physical loss of or damage to property." (Docket Entry No. 13-2 at 74). Once that triggering condition occurs, the Policy covers "actual loss of net income (net profit or loss before income taxes) that *would have been* earned or incurred." (*Id.* (emphasis added)).

The court finds that as a matter of law that charitable donations are included in a nonprofit's revenue calculation, and that the parties must follow *Finger Furniture*'s instruction for business-interruption calculations, limiting the inquiry to historical revenue and not actual post-storm revenue.

SIGNED on March 26, 2020, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge